520 A.2d 1374
**Jean Baker WILLIAMS, Appellant,**

**v.**

**Edward J. McCLAIN, M.D., Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 18, 1986.

Decided Feb. 13, 1987.

McDermott, J., dissented.

George F. Schoener, Jr., M. Mark Mendel, Ltd., Philadelphia, for appellant.

Ronald N. Heck, Patrick J. Shannon, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

The plaintiff in the trial below, Jean Baker Williams, appeals by allowance an order of Superior Court, 345 Pa.Super. 633, 496 A.2d 861, affirming the Court of Common Pleas of Allegheny County, which denied plaintiff's motion for a new trial. In affirming Common Pleas, Superior Court held that the medical opinion of a social worker contained in a hospital report on Williams was admissible under the Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108 (Business Records Act). The social worker was not called to testify. The report involved out of court statements made by Williams to the social worker as well as the expression of an opinion by the social worker, an unqualified witness, based on those out of court statements. She recorded admissions by appellant concerning cause of pain and financial difficulties, and based on these admissions, the absent social worker opined in the report that appellant's problems were caused by matters which were independent of her medical treatment and pre-existed that treatment. Causation was a key issue in the case. The admission into evidence of an opinion contained in this report under the Business Records Act is inconsistent with prior decisions of this Court concerning this exception to the

hearsay rule.[1]   We therefore reverse Superior Court and remand for a new trial.

Jean Baker Williams was born with a congenital dislocated hip.   Before meeting with Dr. Edward McClain about this problem she had seen several physicians between 1962 and 1969.   During this time she underwent at least four surgical procedures.   In December, 1969, Williams visited McClain about her problem, which included pain in the affected hip and a disparity in the length of her legs.   An operation was performed on June 4, 1970, and a McKee-Ferrar type prosthesis [2] was implanted in place of her right hip. After the operation, Williams continued to experience pain. To alleviate this problem a second operation, which replaced the McKee-Ferrar with a Minneapolis implant, was performed on September 4, 1970.   After this operation an infection developed, and several additional procedures were also needed to alleviate a bleeding problem that had developed as a result of the operation.

Williams brought a medical malpractice action against McClain on June 3, 1975.   Her lawsuit was based on two distinct theories.   The first was that McClain had been negligent when performing the operations.   Second, Williams asserted that McClain was liable for her injuries because he did not provide a sufficient explanation of the risks involved in the procedures used, and the alternatives available.   Thus, she could not give an informed consent to the operations.   She contends that as a result of McClain's breach of duty the pain in her hip is far more severe than before the operations, and that her right leg no longer functions effectively.   She also alleges she has become a drug addict as a result of this pain, and that addiction has

1.  We need not consider the admissibility of Williams's out of court statements that are contained in the report.  These statements do not constitute double hearsay since they were offered into evidence as prior inconsistent statements.  Even if these statements were double hearsay, they would arguably be admissible under two independent exceptions, since both the admission of party and business records exceptions would be applicable to these statements.

2.  The McKee-Ferrar is a specific type of false hip used in a total hip replacement.

led to financial difficulty. In 1981, a jury found Dr. McClain not liable. Williams filed a motion for a new trial which was denied on December 17, 1981. She then appealed to Superior Court which affirmed the decision of the trial court on April 19, 1985.

The first issue raised on appeal before this Court deals with the admissibility of a social worker's report. Williams argues that the report was erroneously admitted into evidence. The contents of the disputed report read as follows:

Avocational interests, sewing and church activities, attitude toward illness. Mrs. Williams has had severe hip problems during the years when she had no family and financial problems and, well, she now blames all of her social problems on the constant hip pain, numerous hospitalizations and surgeries which had combined to make her life miserable for too many years, she said.

Current Social Situation. *Mrs. Williams revealed instability and frustration when discussing her environmental circumstances which must contribute to much aggravating stress for the patient, possibly aggravating the existing physical problem.* She had been married twice with both men deserting her to raise three boys by herself. The sons are now grown with two married and one in the service. Mrs. Williams is very attached to the boys and to her elderly parents who live in Greensburg. Financial worries have haunted the patient for years she said with an income limited to the Social Security disability because she has not been able to work steadily due to hip pain. With her many medical expenses and unemployment Mrs. Williams acquired two new large debts and is now faced with bankruptcy and sheriff sales of her house.

(R. 481–483) (emphasis supplied).

Superior Court justified the admission of this report under the Business Records Act. 42 Pa.C.S. § 6108. This Act states in pertinent part:

General Rule.—A record of an act, condition or event shall, insofar as relevant, be competent evidence if the

custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S. § 6108(b).

Superior Court, citing *Isaacson v. Mobil Propane Corporation,* 315 Pa.Superior Ct. 42, 461 A.2d 625 (1983), applied a three part test and concluded that the social worker's report was admissible. The *Isaacson* court summarized this three part test:

A medical record is admissible under the business records exception to the hearsay rule if the report: (1) was made contemporaneously with the events it purports to relate, (2) at the time the report was prepared, it was impossible to anticipate reasons which might arise in the future for making a false entry in the original, and (3) the person responsible for the statements contained in the report is known.

*Isaacson, supra,* 315 Pa.Superior Ct. at 49, 461 A.2d at 629. *See also Paxos v. Jarka Corporation,* 314 Pa. 148, 171 A. 468 (1934) (applying similar test).

These three factors are helpful in determining whether a business record is admissible. A report that contains nothing but facts, and meets this three part test may be admissible under the Business Records Act. Simply meeting these three factors, however, does not guarantee the admissibility of a record under the Business Records Act.

The basic justification for the business records exception to the hearsay rule is that the purpose of keeping business records builds in a reliability which obviates the need for cross-examination. *Fauceglia v. Harry,* 409 Pa. 155, 185 A.2d 598 (1962) (citing 5 Wigmore, Evidence, § 1632 at 514 (3d. ed. 1940)).

Under this exception, hospital records have been admitted to show the fact of hospitalization, treatment prescribed, and symptoms found. *Commonwealth v. DiGiacomo,* 463

Pa. 449, 345 A.2d 605 (1975), *Platt v. John Hancock Mutual Life Insurance Company*, 361 Pa. 652, 66 A.2d 266 (1949). As Superior Court noted in *Commonwealth v. Seville*, 266 Pa.Superior Ct. 587, 405 A.2d 1262 (1979):

No such doubts as to reliability and accuracy are entertained when a record is offered merely to prove facts, such as the event of hospitalization, treatment prescribed, symptoms, given, or the existence of some readily ascertained substance or chemical within the body.

*Id.*, 266 Pa.Superior Ct. at 592, 405 A.2d at 1264.

This Court, however, has consistently held that opinion evidence contained in hospital records is inadmissible. *Commonwealth v. DiGiacomo, supra; Jones Appeal*, 449 Pa. 543, 297 A.2d 117 (1972); *see also Morris v. Moss*, 290 Pa.Superior Ct. 587, 593, 435 A.2d 184, 187 (1981) (opinion that person is conscious is not fact free from doubt). In *DiGiacomo, supra*, we held that the medical diagnosis of a licensed physician was inadmissible because the unavailability of the physician for cross-examination raised doubts as to the reliability of the diagnosis contained in the report. *DiGiacomo*, 463 Pa. at 455–56, 345 A.2d at 608.

■ The social worker's report in this case contains opinion evidence.[3] It states in part, "Mrs. Williams revealed instability and frustration when discussing her environmental circumstances which must contribute to much aggravating stress for the patient, possibly aggravating the existing problem." Not only is the social worker not available for cross-examination, there is no evidence to show that she is

3. The admission of the opinion evidence appears to have been an oversight in this case.

The Court: ...

I think I will stand by my original impression and rule that [the social worker's report] can be read but only to the extent that they clearly show themselves to be factual information obtained from the patient and *never when they verge into the area of opinion by the social worker.*

[Defendant's counsel]: That means where we made the mark, your Honor, at the bottom of the first page I made a mark after the word house, I will have Dr. McClain read no further than that. Okay. Thank you, your Honor.

N.T. 1576 (emphasis not in original).

in any way qualified to make the diagnosis she made. The social worker determined that the pain in Williams's leg may have a psychosomatic source, and that Williams was unstable and frustrated. Clearly her opinion was beyond the knowledge of the average layman. It would, therefore, have to be established that she is "one who because of the possession of knowledge not within ordinary reach is specifically qualified to speak upon the subject to which [her] attention is called." *Steele v. Shepperd,* 411 Pa. 481, 483–84, 192 A.2d 397, 398 (1963) (quoting *Struthers v. Philadelphia and Delaware County Railroad Co.,* 174 Pa. 291, 298, 34 A. 443 (1896)). *See also Dambacher By Dambacher v. Mallis,* 336 Pa.Superior Ct. 22, 36, 485 A.2d 408, 415 (1984) (quoting McCormick on Evidence 33 (3d. ed E. Clearly, 1984)). There is no evidence in the record from which the trial court could have reasonably inferred that this social worker had sufficient expertise in the field of psychiatry or psychology for her opinion to be of any relevant value to the jury.[4] Therefore, admitting this opinion evidence through the Business Records Act, when it could not have been admitted if the social worker testified in person, is contrary to the purpose of the Act.

■ Superior Court also attempted to justify admitting the opinion of the social worker under Rule 803(4) of the Federal Rules of Evidence.[5] Superior Court's reliance on these rules is misplaced. We have not adopted the Federal Rules of Evidence in Pennsylvania. We note, however, that

4. The opinion at issue in this case would not be admissible even in those jurisdictions that are more liberal than ours in admitting the diagnosis of physicians contained in hospital reports. As Justice Roberts noted in his concurring opinion in *DiGiacomo,* the more liberal jurisdictions will only admit a diagnosis upon which qualified physicians would not disagree. *DiGiacomo,* 463 Pa. at 459, 345 A.2d at 610 (quoting 4 Weinstein's Evidence 803(b) [4] at 803–158 (1975)). In the present case, the conjecture of the social worker does not conform to such a standard.

5. In relevant part, 803(4) reads as follows: "The following are not excluded by the hearsay rule ... statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment. Fed.R.Evid. 803(4).

this particular federal rule may not be inconsistent with the Pennsylvania common law exception for medical history. *See, e.g., Ferne v. Chadderton,* 375 Pa. 302, 100 A.2d 854 (1953). Even from that standpoint, we fail to see how it would be a basis for admitting the social worker's opinion evidence. As Superior Court recognizes, this exception applies to statements made by the patient or a member of the patient's family for the purpose of diagnosis or treatment. Thus, while our law may provide a ground for admitting the facts contained in the report, the social worker's opinion was not such a statement.

Finally, the trial court, in denying Williams motion for a new trial,[6] reasoned that admitting this evidence, if it was error, was harmless error because the evidence only related to the issue of damages, and the jury did not reach that issue after it found McClain was not liable.[7]

■ Not all trial errors rise to the level of reversible error. An erroneous ruling must also be harmful to the complaining party before reversal is required. *Anderson v. Hughes,* 417 Pa. 87, 92, 208 A.2d 789, 791 (1965). Upon a proper consideration of the record we hold that the social worker's report related to the liability issue of causation, as well as damages, and so was harmful to Williams. To prove her case Williams had to show that McClain's negligence was the proximate cause of her present injuries. Based on the social worker's opinion, it is possible that the jury found that these injuries would have existed with or without negligence on the part of McClain.

In addition, one of the grounds for the malpractice suit against McClain was that he did not give Williams enough information to enable her to give an informed consent to the operations. The trial judge instructing the jury on this issue, said:

6. Superior Court did not address this issue.

7. It should be noted that the jury verdict was by a vote of ten to two. A minimum of ten was needed to reach a verdict for either party. N.T. 1897.

there is a conflict and I won't refer to specific testimony or evidence, but the plaintiff has stated that she was not informed at any time of the actual type of procedure or what the risks might be or what the alternatives might be, the alternative or alternatives, if any, that she—none of that important information was imparted to her. Dr. McClain states in his testimony that he did, indeed, inform her of it and the fact I think even at one point sketched a thing, a picture for her and at all times kept her informed.

Then, of course, the consent forms that are signed are related to that, but a different thing. I think the original consent form said as explained by the physician.

N.T. at 1879. Therefore, in deciding this issue the jury had to decide who it believed.

In the absence of cross-examination, the social worker's opinion that Williams is unstable and frustrated, and that her pain is likely to have been caused by a psychosomatic disorder materially weakens her general credibility. The impact of the social worker's report was enhanced by the trial court's instruction to take the witness's interest in the outcome of the case into account. The trial court implied that more weight could be given to those with no interest in the outcome. N.T. 1870. Absent the erroneous admission of the report, there would be no harm with this standard instruction. In this case, however, the social worker would fit the category of non-interested witnesses. As a result, the jury was likely to have given the improperly admitted report, on which appellant was denied cross-examination, greater weight than appellant's own testimony.

For the foregoing reasons, we hold that the portion of the social worker's report containing opinion was erroneously admitted into evidence and is likely to have affected the verdict. We, therefore, reverse and remand for a new trial.[8]

8. Since we are reversing and remanding on the basis of the social worker's opinion, we need not address the other issues raised by

FLAHERTY, J., did not participate in the consideration or decision of this case.

PAPADAKOS, J., did not participate in the consideration or decision of this case.

McDERMOTT, J., dissents.

appellant. They are largely peculiar to this particular trial and not likely to recur in the retrial.